Appeal by plaintiff, Tenia Marie Baugh, administratrix of the estate of Jeffery Scott Baugh, deceased, from a summary judgment in favor of the defendants, Billy James Bradford, Millard Bradford, and B B Wood Company, in plaintiff's action to recover damages based upon the Alabama Extended Manufacturer's Liability Doctrine. We affirm.
Millard Bradford and his nephew, Billy James Bradford, were partners in a pulpwood dealership, which operated under the name B B Wood Company. Millard Bradford's contribution to the partnership was to purchase pulp timber, which the partnership then would sell to the Alabama River Pulp Mill. Billy James Bradford was the office manager.
Millard Bradford's practice was to make oral contractual arrangements with various timber-cutting crews, which would perform the actual timber cutting and then deliver the timber to B B Wood Company's yard, where it would be weighed, bound, and then delivered to the Alabama River Pulp Mill. B B Wood Company would be paid a gross sum by the mill, and from that sum it would pay each cutting crew a previously agreed upon amount per cord of wood delivered. Generally, these cutting crews owned their cutting and hauling equipment, and the cuttings were made upon land owned by others with whom B B Wood Company contracted.
In connection with the incident in question, timber was being cut on land owned by Millard's brother, James Bradford. After Millard had received permission to cut this wood, he contracted with Leon Baugh, an experienced wood cutter, to cut the timber. Baugh was told by Millard "what length he wanted" and "where it would sell," but received no other specific instructions:
 "Q. Then he would tell you, this is what we are trying to sell?
"A. Yeah.
 "Q. But he didn't tell you how to cut it or how to go about your business, did he?
 "A. No. He didn't. He didn't, you know, stay out there and make you do this and do that, you know, you done it on your own, you're doing it like you're supposed to do it.
 "Q. Did he tell you or any of your employees how to operate your machinery?
"A. No, sir."
Following his contract with Millard Bradford, Leon Baugh entered into the work *Page 998 
during the week ending September 20, 1985. At or near this time, Leon Baugh learned that Millard Bradford himself owned a log skidder and a loader not then in use, and, not owning such equipment himself, Baugh offered to rent the loader and skidder from Millard:
 "Q. What was your arrangement with Mr. Bradford, Mr. Millard Bradford?
 "A. Well, my arrangement was I rented a skidder and a loader from him. And he got me two saws and I, you know, paid for them through the wood office.
 "Q. All right. What were the arrangements with Mr. Bradford about how you were to pay him for this loader and skidder?
"A. Well, so much a cord, five dollars a cord.
 "Q. Did he pay you for that or was that deducted? How did that work?
 "A. It was took out of my doings, you know, when I loaded and put everything out. When I sold the wood then it was took out."
The two chain saws referred to were bought by Leon Baugh and paid for by him through the B B Wood Company, which deducted a certain amount from the payment for each cord of timber Leon cut.
On the day after he began the work, Leon employed his nephew, Jeffery Baugh ("Jeff"), as a member of his logging crew. At the time of the incident that caused his unfortunate death on October 9, 1985, Jeff had been on the job between three and four weeks. He was killed when a fitting came loose on a hydraulic hose attached to the log loader and caused a log to fall from the loader and strike him.
The log loader, a Barco 130, was a truck-mounted hydraulic arm to which a grappling hook was attached. It was purchased as used equipment by Millard Bradford in September 1983 and was in good condition at that time. At the time Leon Baugh leased it, Millard Bradford had neither modified it nor made any major repair upon it, only minor maintenance having been required during the time Bradford had owned it. Millard, in fact, had supervised an operational check of the loader, including the hydraulic arm, before delivering it to Leon Baugh, and at that time the loader "worked fine." Under their lease agreement, Millard was to perform major repair work; ordinary maintenance and minor repair were assumed by Leon Baugh, including burst hoses and hydraulic sleeves.
On the day of the accident, while Leon Baugh and his crew were operating the loader, the hydraulic hosing on the loader was broken by some limbs, breaking a hosing fitting. The Baugh crew cut the hose off near the point of the break and replaced the original fitting with a self-screwing fitting, which operated properly until the accident occurred. Neither Millard Bradford nor Billy James Bradford knew of or participated in the repairs.
The accident occurred several hours later when one of Leon's employees, who was operating the loader, lifted a pine log that reared up and stood on end, hitting the ground. When that happened, the hydraulic hose came loose at the fitting, the grappling hook opened, and the log struck Jeff Baugh as it fell to the ground.
Plaintiff brought this action against Pettibone Corporation, Barco Hydraulics, Inc., B B Wood Company, Billy James Bradford, Millard Bradford, and others, alleging that the defendants had manufactured a defective machine, knowingly leased a defective machine, failed to adequately inspect and maintain the machine, and failed to warn of the dangers associated with the product. Pettibone Corporation and Barco Hydraulics, Inc., were subsequently dismissed. The remaining defendants answered, and the parties exchanged interrogatories. The defendants moved for summary judgment, based upon the pleadings and the discovery on file, including the depositions of Billy James Bradford, Millard Bradford, and Leon Baugh. Briefs were also filed. Following consideration, the trial court granted summary judgment for those defendants. That judgment was made final under Rule 54(b), A.R.Civ.P., and this appeal ensued. *Page 999 
As we understand plaintiff's principal issue, it is whether Millard Bradford, as lessor of the Barco loader, shall be held liable under the Alabama Extended Manufacturer's Liability Doctrine and the rationale of Skelton v. Druid City HospitalBoard, 459 So.2d 818 (Ala. 1984) (Code of 1975, § 7-2-313, warranty sections extend to rental and lease transactions).
While we recognize that § 7-2-313 warranties extend to leasing transactions, nevertheless, that recognition does not,ipso facto, make the lessor liable under the doctrine adopted in Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976) (§ 402A, Restatement (Second) of Torts (1965), substantially adopted as measure of prima facie case in product liability litigation). See also First National Bank of Mobile v. CessnaAircraft Co., 365 So.2d 966 (Ala. 1978); Skelton, supra. Such liability requires that the seller or lessor be engaged "in the business." That requirement excludes isolated or occasional sellers or lessors. Indeed, Atkins itself quotes from the appendix to § 402A, giving the reasons for this restriction:
 "f. Business of selling. The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.
 "This rule does not, however, apply to . . . the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it. The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon the undertaking on the part of those who purchase such goods. . . ."
Accord, Zanzig v. H.P.M. Corp., 134 Ill. App.3d 617, 89 Ill.Dec. 461, 480 N.E.2d 1204 (1985).
The record before us contains no evidence that Millard Bradford was in the business of leasing or selling loaders. The instance of the rental to Leon Baugh is the only instance of any such transaction, and it appears that this was done only as an accommodation to one who was unable financially to purchase a loader. Thus, there was no evidence that either Millard Bradford or Billy James Bradford was in any business other than the business of buying pulpwood for resale to a pulp mill. For this reason alone, summary judgment was proper on plaintiff's claim against these defendants under the Alabama Extended Manufacturer's Liability Doctrine.
The second controlling issue plaintiff raises pertains to the defense of intervening cause proffered by the defendants.
In General Motors Corp. v. Edwards, 482 So.2d 1176, 1194
(Ala. 1985), this Court defined intervening cause:
 "Loosely defined, an 'intervening cause' is one which occurs after an act committed by a tortfeasor and which relieves him of his liability by breaking the chain of causation between his act and the resulting injury. Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala. 1976). This Court has stated:
 " 'However negligent a person may have been in some particular, he is liable only to those who may have been injured by reason of such negligence, as the proximate cause. Where some independent agency has intervened and been the immediate cause of the injury, the party guilty of negligence in the first instance is not responsible.' Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961)."
Notwithstanding our preceding analysis pertaining to the application of the Alabama Extended Manufacturer's Liability *Page 1000 
Doctrine to the facts of this case, we add that the record does not support an argument that an issue of proximate cause, or of intervening cause, was presented here so as to defeat summary judgment.
For one thing, "intervening cause" requires initially a negligent act on the part of the defendants, Edwards, supra. We fail to perceive any negligence in the first instance on the part of either Billy James Bradford or Millard Bradford. Billy James Bradford was not shown to be involved in any way in the lease transaction between Leon Baugh and Millard Bradford of Millard's own equipment. For aught that appears from the record, Leon Baugh's relationship to the partnership in the performance of his work was that of an independent contractor, over whose operational performance and personnel neither Millard nor Billy James had any control.
Insofar as Millard Bradford's conduct in regard to the equipment and its rental is concerned, we perceive no negligence from the evidence in the record. Millard testified that he had the equipment checked and that it "worked fine," while Leon Baugh testified that "everything was going along so good" until the accident occurred. Indeed, he had had no complaint about the machinery or of any danger attendant to it.
Even so, if there was any prior negligence,arguendo, there was proof of intervening cause. While Baugh's men were operating the loader, they themselves broke the fitting on its hydraulic hose and then fitted a new and different type of fitting, a "self-screwing" type, onto the hose; this fitting was taken from supplies furnished by Leon Baugh. It was after several hours of further operation that the hydraulic hose blew off the fitting again, causing the hook to release the log that struck the unfortunate Jeff Baugh. Leon Baugh himself testified that the hose and fitting "looked fine." There was no other evidence in the record regarding the reason or cause for the hydraulic hose to loosen at the replacement fitting. The only reasonable inference furnished by the record is that the replacement fitting was either not suitable to the machine or was not suitably installed to withstand the pressure caused by the moving log's striking the ground.
Therefore, we must conclude that under either theory — proof of intervening cause or lack of proximate cause — these defendants were entitled to summary judgment.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.