These two cases arose out of a workplace accident in which the plaintiffs Charles Ray Rhodes and Oscar Roberson were injured. Their injuries occurred when a tire on a piece of heavy equipment belonging to their employer, Cordova Clay Company, blew out. The tire, a "recapped" used tire, had been purchased by Cordova Clay from the defendant, Tractor 
Equipment Company.
Rhodes and Roberson both sued Tractor Equipment, seeking damages under theories of breach of warranty and negligence and also under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), alleging that Tractor Equipment was liable for selling a defective tire to their employer.[1] Rhodes's wife joined Rhodes's action, claiming damages for loss of consortium; Roberson's wife made a similar claim in Roberson's action. The court entered a summary judgment for Tractor 
Equipment in each action. The plaintiffs appeal from those judgments, but make no contentions on appeal regarding the warranty claims.
A summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ala.R.Civ.P. 56(c)(3). The party moving for a summary judgment has the burden of establishing the nonexistence of a material fact.Berner v. Caldwell, 543 So.2d 686 (Ala. 1989). If the movant makes such a showing, then the burden shifts to the nonmovant to rebut that showing. Id.
In determining whether an issue of material fact existed in the trial court, this Court must view the evidence in a light most favorable to the nonmoving party. Kizziah v. Golden RuleIns. Co., 536 So.2d 943 (Ala. 1988). Our review is de novo.Hightower Co. v. United States Fidelity Guar. Co.,527 So.2d 698, 701 (Ala. 1988).
Tractor Equipment's motions for summary judgment were based on several grounds, but the trial court did not indicate which ground or grounds entitled Tractor Equipment to the summary judgments. On appeal, Rhodes and Roberson discuss all of the grounds raised, but Tractor Equipment does not refute Rhodes and Roberson's argument that as to some of the grounds asserted Tractor Equipment was not entitled to a judgment. Accordingly, we limit our discussion to those grounds raised in the trial court by Tractor Equipment that here on appeal it argues entitled it to the summary judgments. As to those grounds, the issues before us relate to the existence or nonexistence of an issue of material fact on the questions: 1) whether Tractor Equipment is "in the business" of selling used tires so that it can be subject to the AEMLD as to the tire, and; 2) whether Cordova Clay caused the accident and/or whether Rhodes and Roberson contributed to their own injuries.
 1. Whether Tractor Equipment Was "in the Business"
In the trial court, Tractor Equipment argued that it was not "in the business" of selling used tires, but, at best, was only an occasional seller of used tires. In asserting this argument on appeal, it correctly states that in order for a seller of a purportedly defective item to be liable under the AEMLD, that seller must have been "in the business" of selling items of the kind in question. See Baugh v. Bradford,529 So.2d 996, 999 (Ala. 1988). "That requirement excludes isolated or occasional sellers" from liability. Id.
This rule also applies to AEMLD claims against lessors, as was the situation in Baugh. The AEMLD claim in that case *Page 196 
involved a defective log loader that was leased to the plaintiff's employer, a woodcutter, by the defendant pulpwood buyer. There was a lack of evidence that the pulpwood buyer/lessor was in the business of leasing log loaders. It had done so only once in the past, and then as an accommodation to the woodcutter. Accordingly, the Court held that the trial court had properly entered a summary judgment in favor of the defendant on the plaintiff's AEMLD claim. Baugh, 529 So.2d at 996.
Viewing the evidence most favorably to Rhodes and Roberson, the nonmovants, we find that the record indicates that although Tractor Equipment did not solicit sales of used tires, it would sell used tires as a part of its business. That business, as stated by Tractor Equipment, was the business of "selling new and used heavy equipment [and] provid[ing] service andparts for such equipment." (Emphasis added.) An officer of Tractor Equipment, Benny Winfield, testified that when Tractor Equipment received a used "trade-in" for a new piece of equipment, it would sometimes dismantle the used equipment for such parts. "Inevitably," he said, "if someone needed a wheel or a rim or whatever, as a used rim, then you have a tire that becomes available." Later, he added: "If somebody came in and asked to buy a used tire — we're in the selling business."
Gail Beaird, a co-employee of Rhodes and Roberson who procured used tires for Cordova Clay, testified that he had been purchasing used tires from Tractor Equipment for a period of approximately 8 to 10 years. Two months before the accident, Tractor Equipment had sold Beaird two used tires. In the month of the accident, Tractor Equipment had again sold two used tires to Beaird.
Tractor Equipment argues that it produced evidence showing that its situation was similar to the leasing situation inBaugh — that selling items like the used tire in question here was not common and was not a focus of its business.
We emphasize that in reviewing this summary judgment, we mustview the evidence in a light most favorable to the nonmovants, Rhodes and Roberson. It is undisputed that Tractor Equipment was, among other things, in the business of selling used parts. Also, there is evidence that from time to time the used parts it sold included used tires. Certainly, one viewing the evidence most favorably to Rhodes and Roberson could reasonably infer that Tractor Equipment was "in the business" of selling used tires. This is not to say that it was, but it is to say that the evidence creates a question of fact for a jury to resolve.
 2. Contributory Negligence and Causation
Tractor Equipment argued in the trial court, as it argues here, that as to their accident Rhodes and Roberson were contributorily negligent and/or that the accident was proximately caused by an intervening act, specifically, what it alleges to have been a defective repair of the tire after it was purchased from Tractor Equipment. Rhodes and Roberson argue that Tractor Equipment failed to produce legally adequate evidence of either contributory negligence or "intervening causation" in support of its summary judgment motions.
As to the contributory negligence claim, Tractor Equipment states that it produced evidence that before the accident, Rhodes and Roberson had been engaged in the dangerous activity of "seating" the tire onto a rim by igniting ether that had been sprayed onto the tire. When ignited, the ether exploded and forced the tire against the rim; it could then be inflated.
We agree with Tractor Equipment that it demonstrated both that this activity was hazardous and that it was engaged in by Rhodes and Roberson. Yet, however dangerous or ill-advised this activity may have been, Tractor Equipment has pointed to no evidence that would link it in any way to the blowout of the tire after it was put in service. Simply stated, absent any link to the accident, this evidence not only fails to demonstrate contributory negligence, but is irrelevant.
As to "intervening causation," Tractor Equipment discusses evidence that an employee *Page 197 
of Rhodes and Roberson's employer, Cordova Clay, had seen a hole in the tire and had had the tire repaired by a professional repairer between the time when it was purchased from Tractor Equipment and the time when it was put into service. Rhodes had known of the hole and had arranged for the repair.
In this regard, the record indicates that a defect that led to the blowout, a critical separation in the sidewall of the tire, could have been discovered by the repairer during the unrelated repair of the hole. The record also indicates that when such a defect is discovered by a repairer, there is an "obligation" on the part of the repairer to "reject" the tire for any type of repair.
On appeal, Tractor Equipment argues that the tire was irreparably defective because of the sidewall separation, and that the unrelated repair of the hole should never have been done.[2] Stated differently, Tractor Equipment argues that it cannot be liable to the plaintiffs for selling a defective tire because, it says, a third party should have discovered the sidewall defect in the tire and prevented its use by refusing to make an unrelated repair to a hole in the tire.
The record contains expert testimony to the effect that there were blisters on the tire that the repairer "should have noticed." The expert testified that if he had been asked to repair the hole and had observed these blisters, he would have inspected the tire for "any safety related defects," e.g., the sidewall separation.
To summarize, the record indicates: 1) that the repairer had an obligation to reject the tire for repair if the repairer discovered the sidewall separation, R. 58-59; 2) that the repairer should have seen blistering on the tire, R. 104; 3) that had the expert been repairing the tire and had observed such blistering in conjunction with an unrelated repair, he would have inspected the tire for safety defects, and; 4) that the sidewall separation was discoverable by a professional repairer. R. 54.
As to the purported obligation to reject the tire for repair upon discovery of the sidewall separation, there is no evidence in this case that the repairer discovered the separation. Also, that the sidewall separation was discoverable or that the repairer should have observed blisters on the tire, begs the critical question whether the repairer should have examined forthe sidewall separation. Although there is evidence that the expert would have done so, Tractor Equipment points to no testimony indicating that the repairer should have done so.
Based on the foregoing, the summary judgments are reversed as to the AEMLD and negligence claims. As to the warranty claims, they are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON, SHORES, INGRAM, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, and COOK, JJ., concur in part and dissent in part.
[1] The parties agree that the pleadings in these two actions were "virtually identical."
[2] It says also that Cordova Clay should have inspected the tire before it was later put into service, and that if it had done so, it would have discovered the separation defect in the sidewall. We do not address this argument on appeal, because it was not raised in the summary judgment motions.