WOODALL, Justice.
The plaintiffs appeal from a summary judgment for the defendant, Furon Company (“Furon”). We affirm.
On March 16, 1995, Bruce McGraw was employed by Diamond Rubber Products Company (“Diamond”) to operate various machines involved in the processing of used rubber at its Birmingham plant. One of the machines processed batches of rubber removed from a rubber mill, and was referred to as a batch-off machine. While McGraw was placing rubber onto the conveyor belt of the batch-off machine, his right hand and arm were drawn into the machine, resulting in severe injuries and, ultimately, the surgical amputation of his right hand.
On May 18, 1995, McGraw filed this action against the manufacturer of the batch-off machine and several other defendants.[1] On March 14, 1997, McGraw amended the complaint to add Furon and several additional defendants. Furon filed a motion for summary judgment on May 8, 1998, and a supplemental motion for sum *275 mary judgment on March 2, 1999. On May 10, 1999, the trial court granted a summary judgment for Furon in a non-final order. The summary judgment became final on June 7, 2000, when the remaining defendants were dismissed with prejudice pursuant to settlement agreements. McGraw appealed from the summary judgment for Furon.

I.

The batch-off machine was manufactured by the Akron Standard Division of Eagle Picher, Inc., and was sold to Reeves Rubber Company (“Reeves”) in 1978. Reeves installed and used the machine at its plant in San Clemente, California. Reeves merged with Furon, and Furon acknowledges that it assumed Reeves’ liabilities. Furon closed the San Clemente plant, and the machine was moved to Fu-ron’s plant in Tulsa, Oklahoma.
The machine was never used at the Tulsa plant. Instead, it was placed in an outdoor scrap yard, along with other discarded equipment. In 1992, Gene Fulbright of Furon told R.J. Wheeler, who was also in the rubber business in Tulsa, that the discarded equipment could be taken by anyone who wanted to haul it away from the plant. Wheeler mentioned the batch-off machine to Mike Dyer, a used rubber equipment broker in Akron, Ohio, who had previously mentioned to Wheeler that he was looking for such a machine. Dyer wanted the machine, and Wheeler arranged to have it loaded onto a truck to be shipped to Dyer, along with other equipment that Wheeler was trading in from his own plant.
According to Wheeler, the batch-off machine was in “sad” condition, ie., it needed a lot of work, when it was shipped to Dyer. The machine was dirty and rusty and, according to Wheeler, “everything was hanging off of it.”
Dyer unloaded the batch-off machine in Akron, made no repairs to it, and then shipped it to Diamond, McGraw’s employer, to which Dyer had sold the machine and other equipment. Diamond connected the machine to the electrical service and began to use it, making no changes to the machine prior to McGraw’s accident.

II.

McGraw contends that the batch-off machine was defective, ie., unreasonably dangerous, because it was not adequately guarded and because a safety cable had been removed from it. His claims against Furon are based upon three theories: 1) the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”); 2) negligent failure to provide adequate safety features for the machine; and 3) negligent failure to warn foreseeable users of the dangerous nature of the machine. We will address each claim separately.

III.

McGraw’s first claim is that Fu-ron is liable under the AEMLD. “[T]he term ‘manufacturer,’ as it is used in regard to this cause of action, is applicable to every seller engaged in the business of selling products. Caudle v. Patridge, 566 So.2d 244 (Ala.1990).” Huprich v. Bitto, 667 So.2d 685, 687 (Ala.1995). “ ‘That requirement excludes isolated or occasional sellers’ from liability. [Baugh v. Bradford, 529 So.2d 996, 999 (Ala.1988) ].” Rhodes v. Tractor & Equip. Co., 677 So.2d 194, 195 (Ala.1995).
Furon made a prima facie showing in support of its motion for summary judgment that it has never been in the business of selling batch-off machines or similar products. Therefore, the burden shifted to McGraw to present “substantial evidence” creating a genuine issue of material *276 fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989); § 12 — 21—12(d), Ala.Code 1975. Evidence is “substantial” if it is “of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact to be proved.” West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). McGraw has not offered substantial evidence that Furon is engaged in the business of selling batch-off machines or similar products.
Furon is involved in the processing of used rubber, and its plants contain various types of equipment, including batch-off machines. On an unspecified number of occasions, Furon has sold or otherwise disposed of used rubber machines which it no longer needed. While McGraw argues that this is substantial evidence that Furon is engaged in the business of selling used rubber machines, we disagree. The evidence, reviewed in a light most favorable to McGraw, indicates that Furon is, at most, only an occasional seller. Therefore, Furon cannot be liable under the AEMLD.

IV.

McGraw contends that Furon is ha-ble to him for its negligent failure to provide adequate safety features for the machine. This contention is grounded upon the testimony of John Bordos, a design draftsman for the manufacturer, whose affidavit was offered by McGraw in opposition to Furon’s motion for summary judgment. In the affidavit, Bordos stated, in pertinent part:
“4. Because the machine was going to be used in Reeves’ existing system, it was understood and agreed that Reeves would be responsible for the installation and safe guarding of the machine.... Reeves was in the best position to properly safe guard the machine because the machine was being installed by Reeves and adapted by Reeves to its existing system."
(Clerk’s Record, at 510.) (Emphasis supplied.)
While Reeves voluntarily assumed a contractual duty to provide adequate safety features for the machine, that duty was limited to the machine’s use in its system. The duty did not extend to McGraw, who was injured after the batch-off machine was removed from that system and placed in an outdoor scrap yard.
McGraw relies upon Fuller v. Tractor & Equipment Co., 545 So.2d 757 (Ala.1989). In Fuller, the defendant contracted with Fuller’s employer to install air conditioning on a front-end loader sold by the defendant to Fuller’s employer. This Court held that the contract created a non-dele-gable duty on the part of the seller/defendant to ensure that the air conditioning was installed in a reasonable manner. That case is distinguishable from the case sub judice. Unlike the defendant in Fuller, Furon had no contractual relationship with McGraw’s employer. Also, perhaps more importantly, Furon assumed a duty only to ensure that the machine was installed safely in its system, and did not assume a duty to ensure that it was installed safely in the system of another company with which it had no contact and of which it had no knowledge.

V.

McGraw’s final claim is that Furon negligently failed to warn foreseeable users of the dangerous nature of the batch-off machine. McGraw acknowledges that a duty to warn requires “a finding that Furon knew, or should have known, about the dangerous nature of the machine.” Appellant’s Brief, at 19. While it is undisputed that no one had been injured on the machine during the years that it was used at the Reeves plant, McGraw argues that a “letter from the manufacturer informing *277 Furon that it was responsible for safety-devices clearly put it on notice that the machine was defective.” Id. That argument has no merit.
The subject of the December 13, 1978, letter from the manufacturer was electrical approval prints. The letter stated in pertinent part: “Stopping entire system including any special safety considerations are your responsibility.” This letter was received prior to Reeves’ installation of the batch-off machine into its existing system, and provides no evidence that Reeves or Furon knew or should have known of any dangerous condition of the machine.
McGraw argues that Rutley v. Country Skillet Poultry Co., 549 So.2d 82 (Ala.1989), supports his contention that a duty to warn arose under the facts of this case. However, our holding in Rutley was limited to the plaintiffs’ failure to state a non-AEMLD failure-to-warn claim in their amended complaint. Since a negligent-failure-to-warn claim had not been stated, this Court did not address the merits of such a claim under the facts of that case. However, unlike this ease, the plaintiff in Rutley presented evidence of numerous prior injuries on the relevant machine and the defendant’s actual knowledge of dangerous conditions presented by such machine.

VI.

The trial court did not err in granting Furon’s summary-judgment motion. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
MOORE, C.J., and HOUSTON, LYONS, and JOHNSTONE, JJ., concur.

. Dellia McGraw, Bruce McGraw's wife, makes a claim for loss of consortium. Her derivative claim presents no separate issue on appeal.