MADDOX, Retired Justice.
The sole issue in this case is whether the trial judge erred in entering a summary judgment in favor of the defendants in an action in which Kenneth Mathis claimed that he was injured by a defectively designed piece of farm machinery. We reverse and remand.
This action involves a piece of farm machinery called a Super Packer Cotton Module Builder (“Super Packer”) used to pack cotton into a module or bundle. The plaintiffs Kenneth Mathis and Betty G. Mathis, husband and wife, filed a five-count complaint against Harrell Company, Inc. (“Harrell Company”), the manufacturer of the Super Packer; Larry Askew, Kenneth Mathis’s employer; and Brooks AG Company, Inc. (“Brooks AG”), the supplier of the Super Packer. The complaint alleged: (1) that the Super Packer was defective under the provisions of Alabama’s Extended Manufacturers’ Liability Doctrine (“AEMLD”); (2) that the Super Packer was negligently designed; (3) that the defendants negligently failed to provide adequate warnings and instructions for operating the Super Packer; (4) that the defendants wantonly designed the Super Packer and wantonly failed to provide adequate warnings and instructions for operating the Super Packer; and (5) a claim by Betty Mathis for a loss of consortium. On November 16, 1998, the Mathises filed an amended complaint, in which Kenneth Mathis stated a claim under the Employer’s Liability Act, § 25-6-1 et seq., Ala. Code 1975, in which he alleged that his injuries were caused by a defect in the condition of the Super Packer and a lack of training on the Super Packer. In his amended complaint, Kenneth Mathis also alleged that his injuries were caused by the negligence and/or wantonness of his employer, Larry Askew, in that “Larry Askew failed to adequately warn of the hazards associated with the use of the ‘Super Packer,’ failed to provide literature and training aids and to train [Kenneth Mathis] relating to the hazards associated with the use of the ‘Super Packer,’ failed to provide a safe workplace for [Mathis], and failed to remedy or correct the defect in the ‘Super Packer’ once it was brought to his attention.” Mathis further alleged in the amended complaint that “Larry Askew, ordered and/or directed [Mathis], in the line and scope of this employment, to operate the ‘Super Packer’ when ... Larry Askew, knew or should have known the ‘Super Packer’ was in a defective condition and [Mathis] was bound to conform and did conform to said orders or directions and [Mathis’s] injuries resulted from his having so conformed.”
On March 7, 2001, Betty G. Mathis filed a motion requesting that the trial court dismiss her as a plaintiff, and the trial court granted the motion; therefore, this appeal involves only those claims made by Kenneth Mathis.
On February 2, 2001, Harrell Company filed a motion for a summary judgment, asserting, among other things, that the Super Packer was not defective; that Mathis failed to properly operate the Super Packer according to its instructions; and that Mathis was contributorily negligent.
On March 26, 2001, Askew filed a motion for a summary judgment, asserting, among other things, that the Super Packer was not defective; that Mathis failed to operate the Super Packer properly according to its instructions; and that Mathis was contrib-utorily negligent.
On May 21, 2001, after hearing arguments from each of the parties, the trial court granted the motions for a summary judgment filed by Harrell Company and Askew. The Court, in pertinent part, held:
*251 “The matters before the Court are the Motions for Summary Judgment filed by Defendants Harrell Company, Inc., and Larry Askew. The Court has considered the record, the affidavits, briefs, and argument of counsel. [Mathis] was injured on September 4, 1998 while operating on Defendant Askew’s farm the Super Packer Builder manufactured by Defendant, Harrell Company, Inc. Prior to the accident [Mathis] had observed others operating the packer on several occasions and had himself operated it approximately 30 times.
“Although there were prominently displayed signs warning the operator not to attempt to unlock the tramper cylinder latch while the tramper was in the raised position [Mathis] attempted to do so using a steel bar. The tramper device came down and a metal bar impaled [Mathis’s] arm.
“The Court finds under those material facts that were not in dispute that the equipment the day in question, was not defective, and that the accident was the result of [Mathis’s] failure to properly operate it according to instructions. The Court finds that [Mathis] negligently put himself in a dangerous situation, that he appreciated the danger or that he was in position to appreciate it, and that the appreciation of the danger would have been a conscious appreciation of it when the accident occurred. Therefore, summary judgment is granted, for both of said defendants with the claims against them dismissed due to [Mathis’s] contributory negligence.”
On May 22, 2001, Brooks AG filed a motion for a summary judgment, stating that the motion was due to be granted, “for the same reason and on the same grounds as were found to support the granting of summary judgment in favor of Defendant Harrell Company, Inc., and Defendant Larry Askew by order dated May 21, 2001.” Brooks AG also alleged contributory negligence on the part of Mathis. Finally, Brooks AG alleged that it was, “simply the lessor of the product at issue, as is established by the interrogatory answers given in this action.”
On June 26, 2001, the trial court granted Brooks AG’s motion for a summary judgment.

Facts

Mathis, in his brief to this Court, states that on October 15, 1997, he was working for Askew as a farmhand and was operating a Super Packer that had been designed, engineered, manufactured, and marketed by Harrell Company. Askew was leasing the Super Packer from Brooks AG.
Mathis claims that the record shows that he was never trained in, or given any manuals to read on, the proper way to operate the Super Packer and that he learned to operate the Super Packer “by just doing it.”- He further claims that, immediately before the accident, “Askew had told [him] that he and his other coworkers needed to finish up the field they were working on and move to a different one,” and that he, at that time, “at the urging of Askew, hurriedly finished packing the cotton that was already in the Super Packer, placed a tarp over the back of the tailgate; and began preparing the Super Packer for transport.” (Mathis’s brief, p. 5.)
He claims that “[a]fter attempting to hydraulically break down the Super Packer, [he] realized that the hydraulic cylinder latch would not loosen.” (Mathis’s brief, p. 5.) He says that he then told Askew, “who was standing on the ground beside him, that he could not break down the latch hydraulically and requested that Askew hand him a hammer to knock the latch *252 loose” and that “Askew responded that he did not have a hammer, but that he did have a bar in the back of his truck and to use it.” Id. Mathis states that he then proceeded to pry the latch loose and that, “[ajlthough he had never had to use a hammer or bar to loosen the hydraulic cylinder latch, he had seen other co-workers using a tool for this very purpose.” Id. at 5-6. He states that the record shows that he “unsuccessfully attempted to pop open the latch by applying the bar to the front portion of the latch,” and that he “then climbed on top of the front of the Super Packer and reached around with his right hand and popped the latch loose from the back side.” Id. at 6. When he popped the back portion of the hydraulic cylinder latch loose, the tramper cylinder fell, and a metal bar on the Super Packer impaled and penetrated his left arm, thereby causing severe and permanent injuries. Mathis states the following in his statement of the facts in his brief to this Court:
“Reflecting on the events leading up to the accident, [he] realized, after the fact, that in order for the tramper cylinder to have fallen, it must have been in the raised position. In spite of this, [he] at all times prior to this accident, believed that the tramper cylinder was in the lowered position. And because he was doing exactly what he had seen other coworkers do when the hydraulic cylinder latch jammed — i.e., climbing on the front of the Super Packer and prying open the latch with a tool without incident — [he] was undisputedly unaware of any dangers that he may be presented by his actions. All in all, [he] did not appreciate the dangers presented by his actions because he did not know and had no way of knowing that the tramper cylinder would free-fall upon manually opening the hydraulic cylinder latch. (C-565-582, 614-644, 664-676).”
(Mathis’s brief, p. 6.) (Emphasis in original.) Mathis also presented the deposition testimony of an expert witness, Ray Arms, an engineer, who testified that the Super Packer did not have a safety device, such as a solenoid, in the hydraulic system. He testified, in answer to questions posed to him by Harrell Company’s counsel:
“Q. So, for clarification, when Hugh Harrell [former president of Harrell Company] testified in his deposition that it’s really a safety-type mechanism, that if you have the cylinder up, you cannot unlock it, then you agree with that testimony?
“A. Then you cannot unlock it hydraulically, yes.
“Q. So when Mr. Mathis is up there trying to unlock it manually, all he had to do was lower it and it would have been- — he would have been able to unlock it without ever having to put himself in harm’s way?
“A. Hydraulically, yes, sir.
“Q. Do you have any type of an opinion that’s adverse to that particular way of operating or using this packer? I mean, is that a good design?
“A. That part of it is good. The only thing that I see on the hydraulic system is the cylinder was not locked or stopped, or whatever you wanted to call it, so that the fluid- — -when the bar was put on the clamping device, it’s my understanding that it very easily opened up and then fell. And if the hydraulic fluid was blocked — in other words, was not allowed to flow — no person can move that clamping device.
“One additional safety device would have to physically solenoid or something, shut off the hydraulic fluid, so that it would be impossible to open it with a bar unless you physically took it apart or bent it.
*253 “Q. Of course, if you follow instructions, it doesn’t really matter, does it?
“A. If the instructions or training had been there, it would have worked fine.
“Q. So you don’t really have an opinion that the packer, as far as the hydraulic system, is defective in any way? Is that what I’m understanding what you’re saying?
“A. It needed one more device in the hydraulic system.”
Mathis’s expert witness also testified as follows:
“Q. Let me make sure I clarify something. You’re not saying in this case here today that Kenneth Mathis was at fault in this accident, are you?
“A. No, sir.
[[Image here]]
“Q. What is your opinion with regard to the liability or this machine and the training and the design of the machine with regard to this accident?
“A. The design of the machine with the extra safety device [i.e., the solenoid] would have prevented this accident from happening....
“Q. And in such [lacking the solenoid] you claim that it was defectively designed?
“A. Without that one stop, yes.”
With regard to the metal bar that impaled Mathis’s arm, he stated that “[i]n deciding to use this design and place this steel bar in its present location, the manufacturer should have at least put a guard around it; otherwise, the manufacturer should have put this bar in a different location away from the operator.”
Regarding the sufficiency of the warning that appeared on the Super Packer, the expert stated in his deposition and in his affidavit that the warning was inadequate because (1) it failed to identify the risk and the likelihood of injury associated with attempting to open the hydraulic-cylinder latch manually; and (2) it failed to state the consequence of not following the instruction, i.e., that the tramper cylinder would free-fall upon manually opening the hydraulic-cylinder latch if the cylinder is not completely lowered.
Even though there were operating instructions on the Super Packer, the expert concluded that those instructions were inadequate because, he said, they faded to instruct the user of the proper way to operate the Super Packer. Specifically, the expert stated that the instructions were unclear and inadequate, and because Mathis was not trained to operate the Super Packer, he likely did not understand the instructions.
Harrell Company counters that the record shows that “Mathis had operated the Super Packer prior to October 15, 1997”; that he had, “[i]n fact, ... first operated the Super Packer about one (1) year prior to the accident, in October or November of 1996”; that before he operated the Super Packer himself, “he observed another of Askew’s employees, Cori Lee, operate it on at least twenty (20) occasions” and had also “observed Keith Traylor, another of Askew’s employees, operate the Super Packer at least ten (10) times before he first operated it”; that when he watched these two employees operate the Super Packer, he “would get upon the platform with them and watch them while they operated it”; and that “[s]inee first using the Super Packer in October or November of 1996, [he] had operated it himself approximately thirty (30) times prior to the accident.” (Harrell Company’s brief, p. 2.)
It is undisputed that there was a warning on the Super Packer. That warning read as follows:
*254 “WARNING. DO NOT ATTEMPT TO UNLOCK CYLINDER LATCH WHEN THE TRAMPER IS IN THE RAISED POSITION.”
(Harrell Company’s brief, p. 4.) Harrell Company contends that the record shows that Mathis admitted that the warning sticker was on the Super Packer in 1996 when it was delivered to Askew and that “it was on the Super Packer every time he sat in the Super Packer’s seat for thirty (30) times and the more than sixty (60) times he observed the Super Packer being used.” Harrell Company quotes the following testimony by Mathis to support its contention that it was entitled to a judgment as a matter of law:
“Q. I’m going to show you what I’ve marked as Defendant’s Exhibit 4, Mr. Mathis. Does the warning sticker, which is in the center of this photograph — was that sticker on the module on October 15, 1997, at the time the accident occurred?
“A. Yes, sir.
“Q. Okay. And does that picture accurately and correctly depict or portray the warning sticker on the module on the date of the accident?
“A. Yes, sir.
“Q. And can you read ... what that sticker says?
“A. Yes, sir.
“Q. And does it, in fact, say that, Warning, do not attempt to unlock tramper cylinder latch when the tramper is in raised position’?
“A. Yes, sir.
“Q. And you can read that?
“A. Yes, sir.
“Q. And will you agree with me, sir, that the tramper was in the raised position at the time that you were attempting to unlock the tramper-cylinder latch?
“A. Yes, sir.
“Q. And will you further agree with me, sir, that you were doing exactly what that warning says not to do at the time that you were injured?
“A. Yes, sir. But, you know, you can’t expect to sit there when the sun’s shining, when you could knock it loose and keep working.
“Q. And that was a decision that you made, to try to use that bar, isn’t it?
“A. Well, Larry [Askew] was in a hurry, you know.
“Q. Well, didn’t you make the decision to use that bar? Do you understand my question?
“A. Yes, sir.
“Q. Did you not make the decision to use that bar at the time you were injured?
“A. Yes, sir.”
(Harrell Company’s brief, pp. 4-5.) Harrell Company also argues that Mathis admitted to two different persons that his injuries were his fault. Harrell Company cites the following testimony:
“Q. Okay. Mr. Mathis, did you tell Mr. Askew that the accident was your fault?
“A. Yes, sir.
“Q. Okay. Did you also tell Keith Taylor that the accident was your fault?
“A. Yes, sir.”
(Harrell Company’s brief, pp. 5-6.)
I.
This Court’s standard of review for a summary judgment has been stated many times. It was most recently stated in Rosen v. Montgomery Surgical Center, 825 So.2d 735, 737 (Ala.2001), as follows:
*255 “Our review of a summary judgment is de novo.
“ ‘In reviewing the disposition of a motion for summary judgment, “we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was “entitled to a judgment as a matter of law.” Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).’
“Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).”
Mathis is aware of his burden — he must show that the trial court erred in finding (1) that he failed to prove that the Super Packer was defective and that the accident was the result of his failure to properly operate the machine according to instructions, and (2) that he negligently put himself in a dangerous situation, that he appreciated the danger or that he was in a position to appreciate it, and that he had a conscious appreciation of the danger when the accident occurred. He argues that he presented substantial evidence indicating that the Super Packer was, in fact, defective and that he did not appreciate the danger presented by the Super Packer.
We agree with Mathis’s argument. Mathis did present, by expert testimony, evidence indicating that the Super Packer was unreasonably dangerous because it was improperly designed and indicating that the instructions and warnings on the machine were inadequate to instruct or warn the user of the dangers associated with operating the Super Packer. Specifically, Mathis presented the deposition testimony and the affidavit of an engineering expert, Ray Arms, who concluded that the Super Packer had the following design defects: (1) the hydraulic system lacked a solenoid that would regulate the movement of the tramper cylinder; (2) the hydraulic-cylinder latch could be manually or unintentionally opened; and (3) the metal bar was not guarded or was not positioned so that guarding would not be required. Although Mathis’s expert witness stated that the Super Packer was working as intended, he explained that it was still defective because (1) “it did not have a safety device, such as a solenoid, in the hydraulic system” and (2) “its design created a dangerous safety hazard to the operator.” With regard to the hydraulic system, his testimony could be summarized as follows: (1) the tramper-cylinder latch was very easily opened; (2) a solenoid, or block, in the hydraulic system, would have prevented the tramper-cylinder latch from being manually or unintentionally opened, because the solenoid would shut off the fluid, making it impossible to open the tramper-cylinder latch with the tramper cylinder in *256 the raised position. He further stated that a solenoid is a safety feature that is standard in hydraulic design, and that the Super Packer “needed one more device in the hydraulic system.” The expert witness was asked: “What is your opinion with regard to the liability o[f| this machine and the training and the design of the machine with regard to this accident?” He replied: “The design of the machine with the extra safety device would have prevented this accident.” He further stated:
“And the training of the operators of this machine would have alerted them to the potential dangers and the reasons for operating it the way it should have been operated, which would then enhance the operating instructions for properly operating the machine. So training would have provided more enforcement to the warning, and the additional safety of the block for the hydraulics on there would have prevented even this type of an action, undesigned action.”
With regard to the position of the metal bar that caused the injury, the expert stated that due to its positioning, without a guard in an area so close to the operator, it was defectively designed. He said that “[i]n deciding to use this design and place this steel bar in its present location, the manufacturer should have at least put a guard around it; otherwise, the manufacturer should have put this bar in a different location away from the operator.”
Harrell Company and the other defendants argue that a summary judgment was appropriate because, they say, Mathis did not present substantial evidence indicating that the Super Packer was defective and because, they say, the accident resulted from Mathis’s failure to operate the Super Packer according to the instructions and to heed the warning on the Super Packer and the evidence shows that he was contribu-torily negligent.
In support of its argument, Harrell Company cites Rowden v. Tomlinson, 538 So.2d 15 (Ala.1988), in which this Court upheld a summary judgment for a manufacturer of farm machinery on the grounds of the plaintiffs contributory negligence. In Rowden, a farmhand was injured in an accident involving a combine when he reached his hands into a running auger mechanism of the combine; he brought an action against the farmer-employer and the manufacturer/designer of the farm machinery that injured him. In Rowden, the plaintiff claimed that the machine had been negligently designed and manufactured. This Court considered the claim to be one under the AEMLD. The manufacturer in that case moved for a summary judgment on the ground that the plaintiff, in his own deposition, had shown that he was contributorily negligent. In that case, this Court did find that the trial judge did not err in entering the summary judgment in favor of the defendants. The Court, in Rowden, as Harrell Company points out, placed great weight on the plaintiffs testimony, which this Court set out in the opinion as follows:
“ ‘Q You knew it was dangerous to put your hand around a moving auger, didn’t you?
“ ‘A Yes, sir.
“ ‘Q You don’t say Mr. Tomlinson ought to have told you that. You had enough judgment to know that was dangerous, didn’t you?
“ ‘Q Yes, sir.
[[Image here]]
“ ‘Q So at the time you realized that there was a risk involved if you should get your hand some way into contact with or touch or get it tangled up with the auger, didn’t you?
*257 “ ‘A I never thought about it. I just reached in and got the seed — I mean the grass.
[[Image here]]
“ ‘Q You knew it was an opened, exposed auger, didn’t you?
“‘AYes, sir.’”
538 So.2d at 17.
In Rowden, this Court went on to analyze the testimony of the plaintiff, as follows:
“Rowden further testified that at the time of the accident he was lying across the cowling on top of the combine, removing grass stems from the auger. Rowden acknowledges that he had not been instructed to lie across the motor cover or to perform any work on top of the combine. Rowden also testified that he had never seen any other workers assume such a position. Although a rear platform was in place, where Row-den could have ridden, he testified that he would sometimes use the rear platform and would sometimes lie across the motor cover next to the grain bin and remove stems from the grass seed.
“It is apparent from this testimony that at the time of the accident Rowden knew that the auger mechanism was unguarded, open, and exposed. It is also apparent from his own testimony that Rowden was sufficiently familiar with the machinery to realize the danger involved in placing his hands in the vicinity of the moving parts.
“The evidence shows that the rotating auger blades were open and obvious to Rowden’s view and that he knew, understood, and appreciated their danger. The defendants argue that Rowden was contributorily negligent as a matter of law and thus was barred from recovery.”
538 So.2d at 17-18. We believe that the facts in Rowden are different from the facts in this case. In this case, there is testimony that Mathis had watched other workers operate the Super Packer and that when his coworkers had manually opened the hydraulic-cylinder latch, the tramper cylinder did not free-fall. Also, in this case, the facts do not establish that there was an open and obvious danger such as rotating auger blades in plain view, as was the case in Rowden. In this case, there is testimony that Mathis stated that he was hurried and that he did not know, understand, and appreciate the danger. The facts of this case are more similar to those in Koehring Cranes & Excavators, Inc. v. Livingston, 597 So.2d 1354 (Ala.1992). The plaintiff in that case suffered a leg injury while attempting to raise a crane. He testified that he did not know that the gantry (the structure on the rear of a crane that supports the suspension cables running from the crane to the boom) had an intermediate position; while he was attempting to raise the gantry he removed one pin and then hammered the second pin out, causing the gantry to fall on his left leg, which resulted in severe injuries. In that case, there was evidence indicating that the plaintiff had spent over 20 years in construction work, where he worked either with or around cranes, including 6 years operating different kinds of lattice-boom cranes, including the cranes manufactured by Koehring, Northwest, Lima, Manitowoc, and Loraine. He had also observed pins being removed from gantries on many occasions, and he had also assisted other people in raising and lowering gantries. In Koehring, the plaintiffs expert witness testified that there were defects in the crane that could have been eliminated by generally accepted design principles. In Koehring, this Court affirmed the judgment of the trial court entered on a jury verdict in favor of the plaintiff, and upheld its denial of the defendant’s motion for a directed verdict.
*258 Based on the foregoing, and applying our standard of review applicable to a summary judgment, we conclude that the trial court erred in entering a summary judgment in favor of the defendants, Harrell Company and Brooks AG.
II.
We now address Brooks AG’s argument that it cannot be held liable because it is “merely the supplier of the Super Packer” and because it, “did not participate in the design or manufacture of the Super Packer, and [because] there is no evidence that anyone employed by Brooks [AG] was aware of any accidents involving the Super Packer that could have put Brooks on notice that anyone attempting to lower manually the tramper would expose himself to unreasonable dangerousness.” [1] (Brooks AG’s brief, pp. 11-12.) Brooks AG cites Townsend v. General Motors Corp., 642 So.2d 411 (Ala.1994), in which this Court stated:
“Under the AEMLD, a defendant alleged to be liable as a distributor of a product, such as Joe Money, may affirmatively show that it did not contribute to the alleged defective condition, had no knowledge of it, and had no opportunity superior to that of the consumer or user to inspect the product. In other words, a defendant may show that there was no causal relation in fact between its activities in handling the product and the product’s alleged defective condition; provided, however, that this ‘lack of causal relation’ defense is not available to a defendant who distributes a product under the defendant’s trade name. Casrell [v. Altec Indus., Inc., 335 So.2d 128 (Ala.1976) ]; Atkins [v. American Motors Corp., 335 So.2d 134 (Ala.1976) ]; Johnson v. Niagara Machine & Tool Works, 555 So.2d 88 (Ala.1989).”
642 So.2d at 424. In Rhodes v. Tractor & Equipment Co., 677 So.2d 194 (Ala.1996), this Court stated:
“[I]n order for a seller of a purportedly defective item to be liable under the AEMLD, that seller must have been ‘in the business’ of selling items of the kind in question. See Baugh v. Bradford, 529 So.2d 996, 999 (Ala.1988). ‘That requirement excludes isolated or occasional sellers’ from liability. Id.
“This rule also applies to AEMLD claims against lessors, as was the situation in Baugh. The AEMLD claim in that case involved a defective log loader that was leased to the plaintiffs employer, a woodcutter, by the defendant pulpwood buyer. There was a lack of evidence that the pulpwood buyer/lessor was in the business of leasing log loaders. It had done so only once in the past, and then as an accommodation to the woodcutter. Accordingly, the Court held that the trial court had properly entered a summary judgment in favor of the defendant on the plaintiffs AEMLD claim. Baugh, 529 So.2d at 996.”
677 So.2d at 195-96.
In Baugh v. Bradford, 529 So.2d 996 (Ala.1988), this Court discussed when and under what circumstances the AEMLD can be applied to lessors. This Court wrote:
“While we recognize that § 7-2-313 warranties extend to leasing transac *259 tions, nevertheless, that recognition does not, ipso facto, make the lessor hable under the doctrine adopted in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976) (§ 402A, Restatement (Second) of Torts (1965), substantially-adopted as measure of prima facie case in product liability litigation). See also First National Bank of Mobile v. Cessna Aircraft Co., 365 So.2d 966 (Ala.1978); Skelton [v. Druid City Hospital Board, 459 So.2d 818 (Ala.1984) ]. Such liability requires that the seller or lessor be engaged ‘in the business.’ That requirement excludes isolated or occasional sellers or lessors.”
529 So.2d at 999.
In this case, Brooks AG is clearly “in the business” as evidenced by its following answer to an interrogatory:
“32. Is it the regular business of [Brooks AG] to sell or lease and/or rent products such as the one involved in this case as described above? If not, what is the regular business of [Brooks AG] with respect to this particular product?
“Yes.”
Because Brooks AG was “in the business,” we believe that Alabama law provides that it cannot use the defense that it was merely the supplier of the Super Packer.
III.
We now discuss Askew’s argument that, “it cannot be seriously argued that the Super Packer had a ‘defect’ which arose because of Askew’s negligence or that Askew negligently failed to discover and remedy the defect when he could not have known it even existed.” (Askew’s brief, p. 14.) Although Askew does not use this specific language in his motion for a summary judgment,[2] Askew’s general assertion that Mathis “has failed to produce any evidence of Defendant Askew’s breaching his duty under the Employer’s Liability Act” is sufficient to cover this argument, which is now made before this Court.
The Employer’s Liability Act, codified at § 25-6-1 to -4, Ala.Code 1975, provides:
“(a) Except as otherwise provided by law, when a personal injury is received by a servant or employee in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employee, as if he were a stranger and not engaged in such service or employment, provided such liability is enforced in a court of competent jurisdiction, in the cases following:
“(1) When the injury is caused by reason of any defect in the condition of the ways, works, machinery or plant connected with or used in the business of the master or employer.
“(b) ... [N]or is the master or employer liable under subdivision (a)(1) unless the defect therein mentioned arose from, or had not been discovered or remedied, owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition....”
Section 25-6-l(a) and (b), Ala.Code 1975. We recognize that Mathis had the burden of alleging and proving there was a genuine issue of material fact as to some particular defect in the defendant’s ways, works, machinery, or plant. See Lipscomb v. Paul, 277 Ala. 182, 168 So.2d 214 (1964) (trial court did not err in sustaining de *260 murrer to plaintiffs complaint under the Employers’ Liability Act, because the complaint, containing allegations that the employee was injured by reason of a defect in the condition of the ways, works, machinery, or plant connected with business of employers, i.e., a grain auger having fallen on the employee, was insufficient to state a cause of action under the Act in view of failure of the complaint to contain any allegations to the effect that the auger or other machinery was defective). Also see Sikes v. Jones, 686 So.2d 1202 (Ala.Civ.App.1996) (trial court did not err in directing a verdict in favor of the defendant in an employer’s liability case where a farm employee was injured while attempting to remove a wheel from a trailer by striking it with a sledgehammer while he was standing on wet grass).
On appeal, Askew argues that the Super Packer was not defective within the meaning of the Employer’s Liability Act. He contends that “[although the Employer’s Liability Act does not define the term ‘defect,’ subsection (b) explains that the defect must arise from the negligence of the employer or not be discovered or remedied because of the negligence of the employer.” (Askew’s brief, p. 12.) He then argues that Mathis failed to prove that the Super Packer was defective and he also argues that Mathis was contribu-torily negligent on the occasion of the accident. We believe that Mathis did show, by substantial evidence, that there was a genuine issue of material fact as to whether the Super Packer was defective. Furthermore, Mathis presented evidence indicating that he had never been trained on the proper ways to operate the Super Packer and that he had never been given any manuals or instructions on how to properly operate the Super Packer. In fact, evidence was presented indicating that, before he ever actually operated the Super Packer, Mathis had done nothing more than stand around waiting on his coworkers to pack the cotton, so they could move to a different field and resume their work. Although the evidence shows that Mathis had operated the Super Packer approximately 30 times over a 15-month period, there was evidence indicating that he had prepared the Super Packer for transport only approximately six times, and that he had not been required to use a tool to open the hydraulic-cylinder latch, as had been required when other coworkers had prepared the Super Packer for transport.
Based on the foregoing, we believe a jury question was presented as to whether Askew was negligent within the meaning of the Employer’s Liability Act, and whether his alleged negligence proximately caused Mathis’s injuries and damages. We also believe that a jury question was presented as to whether Mathis was con-tributorily negligent, within the meaning of the Employer’s Liability Act. See Lee v. Shrader, 502 So.2d 741, 743 (Ala.1987), and Rowden v. Tomlinson, supra.
Based on the foregoing, we conclude that the trial court erred in entering a summary judgment for Askew.
IV.
We now discuss the trial court’s finding that Mathis put himself in a dangerous situation, that he appreciated the danger or that he was in a position to appreciate it, and that he had a conscious appreciation of the danger when the accident occurred, so as to make him eontributorily negligent. There is no showing that Mathis appreciated the danger that the tramper cylinder would free-fall when the hydraulic-cylinder latch was manually opened, or that he appreciated the danger that the metal bar would impale his arm if he manually opened the hydraulic-cylinder latch. This Court stated the standard for determining *261 whether a person was contributorily negligent as a matter of law in Hicks v. Commercial Union Insurance Co., 652 So.2d 211, 219 (Ala.1994):
“ ‘In order to sustain a finding of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in danger’s way and a finding that the plaintiff appreciated the danger confronted. Moreover, it must be demonstrated that the plaintiffs appreciation of the danger was a conscious appreciation at the moment the incident occurred. Mere “heedlessness” is insufficient to warrant a finding of contributory negligence as a matter of law.’ ”
(Citations omitted.) (Quoting Central Alabama Electric Co-op. v. Tapley, 546 So.2d 371, 381 (Ala.1989).) In this case, Mathis stated that Askew came to the field where he was working and told him that he needed to finish up and move to another field. Mathis said that he was in a hurry to get his work done and to move to a different field. He also stated that when he got on top of the front of the Super Packer, he did not realize that the tramper was raised. Although there is evidence indicating that he had seen the warnings on the Super Packer and that he was not following the warnings, there was also evidence indicating that at the time of the accident he did not believe that he was doing anything the warning told him not to do.
Based on all the facts and circumstances surrounding this accident, we believe that a jury question was presented as to whether Mathis “negligently put himself in a dangerous situation, that he appreciated the danger or that he was in position to appreciate it, and that the appreciation of the danger would have been a conscious appreciation of it when the accident occurred,” as the trial court found. Consequently, we reverse the judgment of the trial court and remand this cause to the trial court for further proceedings.
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
MOORE, C.J., and JOHNSTONE, J., concur.
HOUSTON, LYONS, BROWN, HARWOOD, and WOODALL, JJ„ concur in the result.
SEE and STUART, JJ., dissent.

. In his reply brief (p. 2), Mathis argues that Brooks AG failed to make this argument to the trial court. However, in Brooks AG's motion for a summary judgment, Brooks AG stated, "Defendant Brooks AG Co., Inc., was simply the lessor of the product at issue, as is established by the interrogatory answers given in this action.” Although the argument was not made in detail, we believe that this statement raised the issue before the trial court, and we consider Brooks AG’s argument preserved for this Court.

. Askew's principal argument in his motion for a summary judgment was that the Super Packer was not defective and that Mathis was contributorily negligent.