Rel: September 6, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

## SC-2024-0148

_____

**Donald J. Mottern, as administrator of the Estate of Lavonne S. Mottern, deceased**

**v.**

**Baptist Health System, Inc., d/b/a BMC - Princeton Medical Center**

**Appeal from Jefferson Circuit Court**
**(CV-11-901140)**

SELLERS, Justice.

Donald J. Mottern ("Mottern"), as administrator of the estate of Lavonne S. Mottern, deceased, appeals from a judgment of the Jefferson Circuit Court dismissing Mottern's claims against Baptist Health System, Inc. ("BHS"), d/b/a BMC - Princeton Medical Center. Lavonne died after she was administered a contaminated intravenous injection at Princeton Medical Center. The primary issue in this appeal is whether the trial court erred in dismissing Mottern's claim under the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD") and his claim alleging a breach of implied warranty under the Uniform Commercial Code ("the UCC"), Ala. Code 1975, § 7-3-101 et seq. Mottern argues that, under the Alabama Medical Liability Act ("the AMLA"), Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq., he is entitled to pursue theories of liability in addition to what might be described as traditional "medical malpractice." We agree with that proposition. However, we also agree with BHS that all of Mottern's claims, including those based on the AEMLD and warranty provisions of the UCC, are subject to the standard-of-care provisions set out in the AMLA. With that caveat, we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

2

After undergoing surgery at Princeton Medical Center, Lavonne died from a blood infection caused by a bacterially contaminated intravenous infusion of total parenteral nutrition ("TPN"), which is a method of providing nutrition to patients who cannot digest foods. Princeton Medical Center is operated by BHS. The TPN Lavonne received was manufactured and provided to BHS by Meds I.V., LLC.

As the administrator of Lavonne's estate, Mottern commenced an action in the trial court against BHS, Meds I.V., and three individuals associated with Meds I.V. Mottern settled his claims against Meds I.V. and the three individual defendants, and those claims were dismissed. Mottern's claims against BHS remained pending and were set for trial.

Mottern's complaint, as amended, set out four counts against BHS, namely, a claim of negligence, a claim of wantonness, a claim under the AEMLD, and a claim alleging breach of implied warranty under the UCC. Two weeks before the trial was scheduled to begin, BHS filed a motion to strike Mottern's AEMLD and UCC breach-of-warranty claims. In support, BHS asserted that Mottern had taken what BHS says is an incorrect position that Mottern's AEMLD and UCC breach-of-warranty claims are not subject to the requirement in the AMLA that claims

3

against medical providers alleging medical injury must be supported by substantial evidence of a breach of the applicable standard of care. See generally §§ 6-5-540, 6-5-542(2), 6-5-548, and 6-5-549, Ala. Code 1975 (providing that the standard of care in cases alleging "medical injury" is the "level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice[] ordinarily have and exercise in like cases" and that a breach of the standard of care must be proven by "substantial evidence"). In other words, BHS asserted that, to the extent that Mottern claimed that his AEMLD and UCC breach-of-warranty claims under the UCC did not require him to prove that BHS breached the standard of care recognized by the AMLA, those claims should be stricken and dismissed.

After hearing oral arguments, the trial court indicated that it would grant BHS's motion and directed the parties to submit a proposed order dismissing the AEMLD and UCC breach-of-warranty claims, which the parties did. The trial court, however, modified the proposed order and

dismissed all four of Mottern's claims against BHS, including the counts alleging negligence and wantonness. Mottern appealed.[1]

As an initial matter, BHS agrees with Mottern that the trial court's dismissal of Mottern's negligence and wantonness claims, which BHS describes as "garden variety medical malpractice claims," should be reversed. BHS's brief at 10. Although the trial court concluded that the negligence and wantonness claims did not meet the strict pleading standards under the AMLA, see § 6-5-551, Ala. Code 1975, BHS concedes that it did not ask the trial court to dismiss those claims and that it received "sufficient notice as to Mr. Mottern's allegations supporting his claim for medical negligence and wantonness." BHS's brief at 13. Thus, BHS "agrees with Mr. Mottern that the trial court's order dismissing Counts One and Two should be reversed." Id. at 14.

As for Mottern's AEMLD and UCC breach-of-warranty claims, however, BHS asserts that they were properly dismissed. As noted, according to BHS, those claims are subject to the AMLA and must be

---

[1]Although the trial court's judgment purports to certify that judgment for a permissive appeal from an interlocutory order under Rule 5, Ala. R. App. P., the judgment disposes of all the claims that were pending below. The parties and this Court agree that the judgment is therefore final and appealable as a matter of right.

supported by a demonstration that BHS breached the applicable standard of care as defined by the AMLA.

Mottern, however, asserts that, to recover under the AEMLD and the UCC for BHS's administration of contaminated TPN in connection with Lavonne's surgery, he does not have to establish that BHS breached any standard of care at all. According to Mottern, to recover under the AEMLD, he merely has to demonstrate that the TPN was defective, that BHS was a seller of TPN, that BHS sold the TPN in question to Lavonne, that the TPN caused Lavonne's death, and that there was no substantial change to the TPN from the time it left BHS's possession until it reached Lavonne. As for his UCC breach-of-warranty claim, Mottern asserts that he has to demonstrate that BHS was "regularly" involved in the business of selling TPN, that it sold the TPN in question to Lavonne, that the TPN was not suitable for its ordinary purpose, and that the TPN harmed Lavonne. Allegations that BHS was at fault in the sense that it breached a standard of care are, Mottern says, unnecessary.

We agree with BHS's position. The original provisions of the AMLA were adopted in 1975. See § 6-5-48 et seq.; Fletcher v. Health Care Auth. of Huntsville, 344 So. 3d 347, 349 n.2 (Ala. 2021). The AMLA was later

6

supplemented by the Alabama Medical Liability Act of 1987 ("the 1987 Act"), which was codified at § 6-5-540 et seq. See § 6-5-541; Fletcher, 344 So. 3d at 349 n.2. The AMLA was supplemented again by the Alabama Medical Liability Act of 1996 ("the 1996 Act"), which amended certain provisions of the 1987 Act and added § 6-5-549.1, Ala. Code 1975. In the 1987 Act, the Legislature expressly recognized an "increasing threat of legal actions for alleged medical injury" that was causing "a crisis threaten[ing] the delivery of medical services to the people of Alabama." § 6-5-540. According to the Legislature, that threat "contributes to an increase in health care costs and places a heavy burden upon those who can least afford such increases." Id. The Legislature also determined that, it "result[s] in a limitation on the number of physicians providing specialized health care in this state." Id. The Legislature reiterated those concerns in the 1996 Act. See § 6-5-549.1

One of the primary purposes of the AMLA is to define the standard of care that health-care providers owe in treating their patients. George H. Lanier Mem'l Hosp. v. Andrews, 901 So. 2d 714, 720 (Ala. 2004). Section 6-5-484(a), Ala. Code 1975, which is part of the AMLA as originally adopted in 1975, provides that, "[i]n the case of a hospital

7

rendering services to a patient, the hospital must use that degree of care, skill, and diligence used by hospitals generally in the community." As part of the 1987 Act, the Legislature expressly defined the standard of care for health-care providers, including hospitals, as "that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice[] ordinarily have and exercise in like cases." § 6-5-542(2). "A breach of the standard of care is a failure by a health care provider to comply with the standard of care, which failure proximately causes personal injury or wrongful death." Id. Such a breach must be established through substantial evidence. §§ 6-5-548 and 6-5-549.

BHS asserts that the very purpose of the AMLA is to regulate actions for "medical injury," that a medical injury is harm occurring from the provision of medical care, that a medical injury is precisely what occurred when BHS administered TPN to Lavonne, and that Lavonne's medical injury forms the basis of all of Mottern's claims. Thus, BHS says, this is the type of action, regardless of how it is denominated, that the Legislature had in mind when it acknowledged, and undertook efforts to

8

curb, the "crisis" caused by the threat of litigation against health-care providers.

For his part, Mottern points to cases indicating that the AMLA does not limit plaintiffs to only one theory of liability. For example, Mottern cites Collins v. Ashurst, 821 So. 2d 173 (Ala. 2001), in which the plaintiff alleged trespass and assault and battery against a surgeon who allegedly had removed the wrong ovary from the plaintiff's body. This Court held in Collins that the trial court had erred in striking the plaintiff's claims alleging trespass and assault and battery because the AMLA does not limit a plaintiff to "only one cause of action." Id. at 177. See also Mobile Infirmary v. Delchamps, 642 So. 2d 954 (Ala. 1994) (involving AEMLD and UCC breach-of-warranty claims against a hospital that had placed allegedly defective temporomandibular implants in the plaintiff's jaw).

Both Collins and Delchamps, however, indicate that the AMLA did indeed apply to the plaintiffs' theories of liability in those cases. In deciding that the AMLA does not limit a plaintiff to one theory of liability, the Court in Collins noted that "this Court has accepted other causes of action, distinct from medical malpractice, as being governed by the AMLA," and quoted Mock v. Allen, 783 So. 2d 828, 832 (Ala. 2000), which,

9

in turn, cited and discussed precedent applying the AMLA to various theories of liability, including AEMLD and UCC breach-of-warranty claims. 821 So. 2d at 176-77. In Delchamps, the plaintiff, Tonya Delchamps, alleged that the temporomandibular implants that had been placed in her jaw at Mobile Infirmary Hospital were defective and had caused her to suffer bone degeneration. Her allegations against the hospital included a claim under the AEMLD, breach-of-warranty claims under the UCC, and a claim alleging negligence in the design, manufacture, and sale of the implants. Mobile Infirmary asserted that all the claims were barred by the statute of limitations set out in the AMLA, § 6-5-482, Ala. Code 1975. This Court agreed, reasoning as follows:

> "Looking to the substance of the claims alleged in Delchamps's complaint, we hold that the limitations provisions of § 6-5-482 govern all of those claims. Section 6-5-482 is broad; it applies to all actions alleging 'liability' as well as 'error, mistake, or failure to cure, whether based on contract or tort.' This language encompasses contract claims alleging breach of express and implied warranties, as well as tort claims alleging liability under the AEMLD and alleging negligence in the design, manufacture, sale, or distribution of a product and negligence in the failure to warn of dangers associated with its use. Further, although Delchamps urges this Court to view the relationship between her and the defendant in all of its 'complexity' and not to reduce it in procrustean fashion to a relationship of patient-physician or

10

> patient-health care provider, the relationship between them is unquestionably one of patient and health care provider. The act that forms the basis of Delchamps's AEMLD, negligence, and warranty claims not only occurred during the course of her treatment, but also constituted the very medical treatment she sought from Mobile Infirmary."

642 So. 2d at 957-58. Likewise, in the present case, the act that forms the basis of Mottern's AEMLD and UCC breach-of-warranty claims occurred during the course of the treatment Lavonne sought from BHS.

Although Mottern does not dispute that his AEMLD and UCC breach-of-warranty claims are governed by the AMLA to an extent, he claims that only the AMLA's "procedural provisions" apply. He suggests that such provisions include, among others, the statute of limitations set out in § 6-5-482 and the strict pleading requirements and limitations on discovery set out in § 6-5-551. In other words, he suggests that AMLA provisions that are more "procedural" in nature, which presumably are aimed at the same "crisis" that prompted the Legislature to impose a particular standard of care, apply, while the more substantive standard-of-care provisions themselves do not.

The issue of the applicability of the standard-of-care provisions set forth in the AMLA simply was not raised in Delchamps. The opinion in Collins, however, appears to suggest that the plaintiff's assault-and-

11

battery and trespass claims would be subject to the AMLA's standard-of-care provisions. In determining that the AMLA did not preclude the plaintiff's theories, the Court said:

"[W]e note that the AMLA recognizes the possibility that more than one type of action may be brought under that act. Specifically, the definitions section, § 6-5-542, which the trial court interpreted to allow only one cause of action, i.e., medical malpractice, states, in pertinent part, that '[t]his definition [for "standard of care"] applies to all actions for injuries or damages or wrongful death whether in contract or tort and whether based on intentional or unintentional conduct.' (Emphasis added.) Thus, the AMLA envisions both tort claims and contract claims, based on either intentional or unintentional conduct. This particular section provides the applicable standard of care that governs all actions against the health-care providers specified in the act; it does not contain language that would lead to the conclusion that the only available cause of action, in contract or in tort, is medical malpractice."

821 So. 2d at 176 (final emphasis added). It is worth noting that the United States District Court for the Southern District of Alabama suggested that the standard-of-care provisions of the AMLA apply to all theories of liability that involve medical injury arising out of the provision of medical care. See M.D.P. v. Houston Cnty. Health Care Auth., 821 F. Supp. 2d 1295, 1301-02 (M.D. Ala. 2011) (ruling that, based on Collins, the plaintiffs could pursue a contract claim that arose out of the same medical care that underlied their tort-based claims, but noting

that the "issue may well turn out to be academic" because "[t]he standard of proof, standard of care, discovery, complaint requirements, statute of limitations, and qualifications to give expert testimony are all the same for both contract and tort actions under the clear language of applicable sections of the AMLA"). Certainly nothing in Collins indicates that the plaintiff in that case did not have to prove her claims by establishing that the defendant health-care provider had breached the applicable standard of care as defined by the AMLA.

In adopting provisions of the AMLA, along with recognizing the "crisis" caused by the "increasing threat of legal actions for alleged medical injury," see §§ 6-5-540 and 6-5-549.1; defining the standard of care applicable in actions alleging medical injuries; and adopting strict pleading requirements and limitations on discovery, the Legislature also placed the burden on plaintiffs to prove a breach of the standard of care through "substantial evidence," defined "similarly situated health care provider," and declared that health-care providers can testify as expert witnesses against other health-care providers only if the witnesses are similarly situated to the defendant health-care provider. §§ 6-5-548 and 6-5-549. Those definitions and restrictions apply to all medical-liability

13

actions, regardless of whether they are based on intentional or unintentional conduct and regardless of whether they are based on tort or contract principles. §§ 6-5-542(2), 6-5-548, and 6-5-549.

In Ex parte Vanderwall, 201 So. 3d 525 (Ala. 2015), a former patient of a physical therapist alleged that she had been sexually assaulted by the therapist during a physical-therapy session. She brought an action alleging assault and battery against the physical therapist, who objected to some of the plaintiff's discovery requests on the ground that they were prohibited by the AMLA. On mandamus review, this Court held that the plaintiff's claims were not subject to the AMLA, regardless of whether the acts underlying the action were committed by a health-care provider during an appointment for medical care, because the gist of the action was not to recover for a medical injury. In doing so, the Court abrogated the interpretation of the AMLA espoused in Mock v. Allen, 783 So. 2d 828 (Ala. 2000), and O'Rear v. B.H., 69 So. 3d 106 (Ala. 2011), both of which had involved claims alleging sexual misconduct against health-care providers that occurred while they were supposed to be providing medical care and both of which had held that the AMLA applied to those claims. The Court in Vanderwall noted that, "under the interpretation of the

14

AMLA enunciated in <u>Mock</u> and reiterated in <u>O'Rear</u>, [the plaintiff's] allegation of sexual misconduct would be governed by the proof requirements of the AMLA." 201 So. 3d at 536. In considering and rejecting the idea that the AMLA (which includes "proof requirements") applied to an alleged sexual assault, the Court in <u>Vanderwall</u> indicated that the AMLA applies to "actions in which the alleged injury occurred <u>because of</u> medical treatment." 201 So. 3d at 537. The Court stated as follows:

> "'"The Legislature declared that it enacted the AMLA in response to increasing health-care costs caused by 'the increasing threat of legal actions for alleged medical injury.' Ala. Code 1975, § 6-5-540. The AMLA applies to actions against a health-care provider alleging a 'breach of the standard of care.' Ala. Code 1975, § 6-5-540 <u>et seq</u>. A breach of the standard of care is the 'fail[ure] to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.' § 6-5-548. Thus, <u>the AMLA applies to conduct that is, or that is reasonably related to, the provision of health-care services allegedly resulting in a medical injury</u>. ..."'
>
> "<u>Mock</u>, 783 So. 2d at 836-37 (Lyons, J., dissenting) (emphasis added). See also <u>Ex parte Addiction & Mental Health Servs., Inc.</u>, 948 So. 2d 533, 535 (Ala. 2006) ('"By definition, a 'medical-malpractice action' is one for redress of a 'medical injury.' See § 6-5-540 (purpose of the [AMLA] is to regulate

15

actions for 'alleged <u>medical</u> injury')...."' (quoting <u>Taylor v. Smith</u>, 892 So. 2d 887, 893 (Ala. 2004))).

"From the foregoing, it is clear that the AMLA is not just concerned with who committed the alleged wrongful conduct or when and where that conduct occurred, but also with <u>whether the harm occurred because of the provision of medical services</u>."

201 So. 3d at 537 (the quoted portion of Justice Lyons's dissent in <u>Mock</u> is quoting a dissenting opinion authored by Justice See on original submission in <u>Mock</u>, which was withdrawn on rehearing as a result of Justice See's recusal). According to the Court in <u>Vanderwall</u>, "sexual misconduct by a health-care provider toward a patient is not medical treatment, and it does not result in a 'medical injury' as such an injury is understood under the AMLA." 201 So. 3d at 540. Although the Court in <u>Vanderwall</u> rejected the idea that a sexual assault can be the basis of a claim alleging a medical injury that is subject to the AMLA's "proof requirements," it did not reject the idea that theories of liability that are indeed based on medical injuries resulting from the provision of medical treatment are subject to those proof requirements.

Although neither party in the present case discusses <u>Houston County Health Care Authority v. Williams</u>, 961 So. 2d 795, 811 (Ala. 2006), that case is at least worth noting. In <u>Williams</u>, the Court

16

considered whether an action had been properly certified as a class action. The plaintiffs in <u>Williams</u> alleged that they had been exposed to potential or actual fungal infections when receiving breast implants at a surgery center. There was evidence indicating that the saline used to fill the implants had been contaminated with fungal spores.

> "Against [the surgery center] the plaintiffs asserted claims labeled 'breach of implied warranty'; 'medical malpractice'; 'AEMLD,' i.e., a claim under the Alabama Extended Manufacturer's Liability Doctrine for allegedly providing defective products unreasonably dangerous for the use for which they were intended; 'premises liability'; 'duty to warn'; 'suppression'; 'res ipsa loquitur'; and 'class action complaint[]' ...."

961 So. 2d at 803. In considering whether the plaintiffs' claims satisfied the "predominance" requirement of class certification, the Court noted the necessity of considering the substantive law of the plaintiff's claims, including "the proof that the plaintiffs must present to establish each element." <u>Id.</u> at 810. The Court then concluded that, "[b]ecause the plaintiffs allege a 'medical injury' arising in the context of their patient-hospital relationship as the basis for <u>each of their claims</u>, see <u>Ex parte Addiction & Mental Health Servs., Inc.</u>, 948 So. 2d 533 (Ala. 2006), <u>all the claims</u> are governed by the [AMLA]." <u>Id.</u> (emphasis added). Immediately thereafter, the Court quoted the requirement in the AMLA

17

that claims be supported by evidence showing a breach of the standard of care set out in the AMLA. Id. Additionally, after discussing whether and how each plaintiff had been injured and therefore had or lacked "standing" to sue, the Court considered the elements of each individual theory of liability, but led with the following proposition:

> "[W]e look to see if those plaintiffs with standing carried their burden of proving that, with respect to this potential class, common questions of law or fact predominate over individual issues. To that end, we consider the elements of certain of the claims included within the certified class action. To prove their claim specifically labeled as one for medical malpractice, as well as all of their other differently denominated claims, the plaintiffs must prove a breach of the standard of care. See, e.g., Ala. Code 1975, § 6-5-548(a)."

961 So. 2d at 812-13. Neither party in this case cites Williams or explains why it is or is not relevant here.

More recently, in Jackson Hospital & Clinic, Inc. v. Murphy, 343 So. 3d 490 (Ala. 2021), the Court considered an action against Jackson Hospital & Clinic, Inc. ("Jackson Hospital"), brought by a former patient after a piece of a "glidewire" used in connection with kidney-stone surgery had broken off in the plaintiff's bladder. Id. at 492. One of the issues on appeal was whether the plaintiff, Cameron Murphy, had sufficiently pleaded a "defective-equipment claim" against Jackson Hospital and, if

18

so, whether he had presented sufficient evidence in support of such a claim. In determining that Murphy had not satisfied his burden of proof, the Court assumed that he had sufficiently pleaded his defective-equipment claim and stated as follows:

> "This Court has previously concluded that a claim that a hospital has provided defective equipment during the course of medical treatment sought from the medical provider is a claim governed by the provisions of the AMLA. See Mobile Infirmary v. Delchamps, 642 So. 2d 954, 957 (Ala. 1994). Thus, even assuming, as Murphy argues, that a claim related to Jackson Hospital's provision of defective equipment was adequately pleaded in Murphy's complaint, to successfully prove that claim and recover against Jackson Hospital, Murphy was required to demonstrate that Jackson Hospital, in connection with the furnishing of that equipment, breached the applicable standard of care. See § 6-5-548(a), Ala. Code 1975 ('In any action for injury or damages ... against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.'). See also, e.g., Anderson v. Alabama Reference Lab'ys, 778 So. 2d 806, 811 (Ala. 2000), and Allred v. Shirley, 598 So. 2d 1347, 1350 (Ala. 1992). The AMLA defines '[s]tandard of care' as 'that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases.' § 6-5-542(2), Ala. Code 1975. It defines '[a] breach of the standard of care' as 'the failure by a health care provider to comply with the standard of care ....' Id."

343 So. 3d at 498-99.

19

Mottern relies heavily on <u>Skelton v. Druid City Hospital Board</u>, 459 So. 2d 818 (Ala. 1984), which was decided before the 1987 Act was adopted, in which this Court held that a former patient of a hospital could maintain a claim alleging that the hospital had impliedly warranted that a suturing needle that broke off in the patient's body was fit for its intended purpose. The Court rejected the hospital's arguments that it had provided only a "service" to the patient and not a "good" and that the suturing needle was simply equipment that was used incidentally to the provision of medical care. The Court reviewed cases involving "'mixed' or 'hybrid' agreements, those that involve both a sale of goods and a rendering of services" and determined that the fact that the hospital had provided a service in using the suturing needle was not dispositive. 459 So. 2d at 821-22. In addition, the Court determined that the defendant's status as a hospital did not mean that it could not be a "seller" of goods under the UCC. <u>Id.</u> at 822-23. But the Court in <u>Skelton</u> did not hold that the AMLA, including its provisions regarding the standard of care, were irrelevant to the plaintiff's claims. Indeed, there was absolutely no mention in <u>Skelton</u> of the AMLA or of any standard of care that might apply. For all that appears from the opinion, the issue simply was not

20

raised. As BHS states in its brief to this Court, "whatever relevance Skelton has to when UCC warranties attach to a transaction between a health care provider and a patient, it has nothing to say on whether liability for the breach of such warranties requires proof that the health care provider violated the applicable standard of care." BHS's brief at 33.

"By definition, a 'medical-malpractice action' is one for redress of a 'medical injury.' See § 6-5-540 (purpose of the [AMLA] is to regulate actions for 'alleged medical injury') ...." Taylor v. Smith, 892 So. 2d 887, 893 (Ala. 2004) (plurality opinion). The AMLA applies to "any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care." § 6-5-551 (emphasis added). Regardless of the theory of liability alleged, "it is the substance of an action -- rather than its form -- that determines whether the AMLA applies." Ex parte Huntsville Emergency Med. Servs., Inc., 372 So. 3d 538, 543 (Ala. 2022). The AMLA is "concerned with ... whether the harm occurred because of the provision of medical services." Vanderwall, 201 So. 3d at 537. "Medical services" are those that are provided for "therapeutic or medical reason[s]." Id. at 538.

21

In adopting the original provisions of the AMLA in 1975, the Legislature declared that hospitals and other medical providers are not to be considered "insurer[s] of the successful issue of treatment or service." § 6-5-484(b). Holding BHS liable without consideration of the applicable standard of care is a move in the direction of treating health-care providers as insurers. Considering that principle and the rest of the AMLA, including its expressly stated purpose of mitigating the crisis caused by the threat of litigation against health-care providers for medical injuries caused by acts and omissions occurring as part of the provision of medical services, it is clear that the AMLA, including its standard-of-care provisions, applies to <u>all</u> of Mottern's claims.

Under our precedent, Mottern is entitled to assert various theories of liability against BHS, a health-care provider, including alleging claims under the AEMLD and breach-of-warranty claims under the UCC. But those claims are subject to the AMLA, including its standard-of-care provisions. With that caveat, the trial court's judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Wise and Mendheim, JJ., concur.

Mitchell, J., concurs in the result, with opinion, which Parker, C.J., joins.

Cook, J., concurs in the result, with opinion, which Stewart, J., joins.

Shaw, J., dissents, with opinion, which Bryan, J., joins.

MITCHELL, Justice (concurring in the result).

I agree with the Court's holding that the trial court's judgment dismissing the four claims against Baptist Health System, Inc. ("BHS"), d/b/a BMC - Princeton Medical Center, should be reversed. I disagree, however, with the reasoning employed by the main opinion. As explained below, I believe the plaintiff, Donald J. Mottern, as administrator of the Estate of Lavonne S. Mottern, deceased, adequately pleaded all four counts.

I.

With respect to Counts I and II -- Mottern's traditional medical-malpractice claims -- the main opinion reverses the trial court's judgment of dismissal because "BHS 'agrees with Mr. Mottern that the trial court's order dismissing [those claims] should be reversed.'" ___ So. 3d at ___ (quoting BHS's brief at 14). In my view, the bare fact of the parties' agreement is not enough to justify reversal. As we have often explained, an appellate court can "affirm the judgment of the trial court if that judgment is supported by any valid legal ground, even if that ground was not argued" on appeal. Ex parte CTB, Inc., 782 So. 2d 188, 191 (Ala. 2000). Accordingly, "the fact that an appellee concedes that a reversal is

required, or does not defend a trial court's judgment, does not always mean that this Court must reverse that decision." Zinn v. Till, 380 So. 3d 1026, 1029-30 (Ala. 2023) (Shaw, J., concurring in the result); see also id. at 1030 (Mitchell, J., joined by Parker, C.J., and Bolin, J., concurring in the result) (agreeing with Justice Shaw that appellees cannot change the law by stipulation and emphasizing that "the fact that the parties agree on a point of law does not establish that the point is correct").  I would reverse the trial court's judgment of dismissal on Counts I and II based on the law itself -- not on the parties' "agree[ment]" about the law.

When we analyze the issue based on the law itself, the outcome is the same.  As the main opinion notes, the trial court dismissed Counts I and II on its own initiative, based on its view that those counts were not pleaded with the specificity required by § 6-5-551, Ala. Code 1975. Section 6-5-551 requires a medical-malpractice complaint to include "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts."

The complaint here readily satisfies that standard: it describes the challenged conduct (the procurement and administration of contaminated TPN), the place (BHS's hospital) and time (March 10-14, 2011) at which that conduct took place, and the resulting harm (death). The trial court's judgment does not give -- and I am not aware of -- any reasons for concluding that the complaint fails under § 6-5-551.

Even if the complaint did lack some necessary detail, the trial court gave no reason for refusing to give Mottern a chance to amend his complaint to include the omitted information. That refusal likely exceeded the trial court's discretion in this context, because this case had been litigated for 13 years based on the parties' shared assumption that all four counts were adequately pleaded and because the defendants -- both expressly and via their conduct throughout the litigation -- consented to the adequacy of the notice of the claims against them. See Gulf Coast Realty Co. v. Professional Real Est. Partners, Inc., 926 So. 2d 992, 1002-03 (Ala. 2005) (quoting Rule 15(a), Ala. R. Civ. P., and explaining that this Court reviews a trial court's refusal to allow a party to amend a complaint for an abuse of discretion).

26

I would reverse the trial court's judgment on Counts I and II on these bases, rather than on the bare fact of BHS's agreement that the judgment should be reversed.

II.

Turning to Counts III and IV -- Mottern's product-liability claims -- the main opinion concludes that Mottern can prevail on those claims only if he pleads and proves: (1) all the traditional elements of a product-liability claim <u>and</u> (2) that BHS breached a medical standard of care. The main opinion then goes on to reverse, without explanation, the trial court's judgment dismissing Mottern's product-liability claims.

Respectfully, I do not understand how the main opinion's judgment follows from its analysis. If it is true -- as BHS argues and as the main opinion apparently concludes -- that Mottern was required to plead breach of the standard of care with respect to his product-liability claims and failed to do so, then it would seem that the trial court's judgment of dismissal with respect to those two counts should be <u>affirmed</u>. But the main opinion instead reverses and remands, with no explanation as to how or why the trial court erred. I believe a different approach is required.

27

A.

I would begin by addressing the primary reason for dismissal given by the trial court, which is that -- in the trial court's view -- BHS was "not a seller" of TPN. The trial court reasoned that BHS "primarily provided services to the deceased…, rather than goods," and therefore did not qualify as a "seller" capable of liability under either the manufacturing-defect claim (Count III) or the breach-of-warranty claim (Count IV). (Emphasis added.) Accordingly, the trial court dismissed both of the product-liability counts against BHS.

The trial court's reasoning on this point may appear sound at first blush, but, as Mottern points out, it is foreclosed by this Court's precedent. In Skelton v. Druid City Hospital Board, 459 So. 2d 818 (Ala. 1984), this Court held that hospitals supplying physical materials (in that case, a suturing needle) as part of medical procedures are "sellers" of those products for purposes of product-liability actions. Under Skelton's logic, BHS's administration of TPN counts as the "sale" of TPN sufficient to support Mottern's product-liability claims.

The Business Council of Alabama ("BCA") has filed an amicus brief arguing that the Skelton Court manifestly erred in treating hospitals as

28

"sellers" of "goods" and urging our Court to overrule that holding. In my view, the BCA makes several compelling arguments in support of its request. But because the request to overrule that aspect of Skelton's holding was raised for the first time by an amicus and has not been the subject of fulsome adversarial briefing by the parties,[2] I would not grant that request at this stage.[3] See State ex rel. Baxley v. Johnson, 293 Ala. 69, 74, 300 So. 2d 106, 110 (1974). I would, however, give serious consideration to such a request if it were raised by the parties in a subsequent appeal.

Because the trial court's determination that BHS was not a "seller" conflicts with Skelton, we must consider whether there is another

---

[2]BHS does argue that Skelton should be overruled to the extent it does not include a "breach of medical duty" requirement. But BHS's brief does not ask the Court to overrule Skelton's holding that hospitals are "sellers" of the medical equipment that they use in treating patients. See BHS's brief at pp. 43-46.

[3]In his reply brief, Mottern argues that, even if this Court did overrule Skelton at the BCA's urging, BHS's administration of TPN would nonetheless qualify as a "sale" of a "good" because: (1) Alabama law provides that, for purposes of the implied warranty of merchantability, "the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale," § 7-2-314(1), Ala. Code 1975 (emphasis added), and (2) TPN is a type of "food." This argument, too, lacks the benefit of adversarial briefing and illustrates why the Court should not attempt to resolve the Skelton issue at this stage.

justification for affirming the trial court's judgment of dismissal as to Counts III and IV. See Ex parte CTB, Inc., 782 So. 2d at 191. Here, there are two plausible arguments that could be made in support of the trial court's judgment. As explained below, I don't believe either argument can ultimately succeed.

B.

The first alternative basis for affirmance -- which was contemplated by the trial court itself -- would be to hold that Counts III and IV were not pleaded with the level of specificity required by § 6-5-551. As explained above, however, I believe that the complaint was pleaded with specificity. And, even if it had not been adequately pleaded, Mottern should have been given leave to amend. This first alternative basis is thus, in my view, insufficient to support the trial court's judgment.

C.

The second alternative basis for affirmance would be to conclude -- as the main opinion does -- that the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq., requires all claims stemming from a medical injury to allege that the defendant breached a medical "standard of care." If that were true, then Mottern's product-

30

liability claims would fail unless those claims also alleged that BHS breached the standard of care.

This second alternative is also insufficient -- for the simple reason that Mottern's complaint <u>does</u> allege that BHS violated the standard of care. The complaint specifically alleges that BHS "did not possess and exercise reasonable care, skill and diligence with regard to the … furnishing, providing, and administration of the TPN solution" and that BHS "[n]egligently sold, furnished, provided [and] administered an unpure, adulterated, and contaminated TPN solution[]" to Lavonne. So even if Mottern were required to plead breach of a medical standard of care, his complaint satisfies that requirement.

## III.

I would reverse the trial court's judgment of dismissal and remand the case for trial. If another appeal is taken after trial, I urge the parties to use that opportunity to address the question whether this Court's decision in <u>Skelton</u> is due to be overruled for the reasons given in the BCA's amicus brief.

Parker, C.J., concurs.

COOK, Justice (concurring in the result).

The main opinion is clearly correct that we must reverse the Jefferson Circuit Court's dismissal of Counts I - IV of the complaint filed by Donald J. Mottern, as administrator of the estate of Lavonne S. Mottern, deceased. However, because the main opinion's discussion of the applicability of the standard-of-care provisions in the Alabama Medical Liability Act ("the AMLA"), Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq., is dicta, I concur only in the result.

The only issue at stake in this appeal is whether the trial court could have properly dismissed Mottern's claims on the ground that they were not pleaded with sufficient specificity to satisfy the AMLA. On the eve of trial, and only with respect to Counts III and IV of Mottern's complaint (the product-liability claims under the Alabama Extended Manufacturer's Liability Doctrine and the Uniform Commercial Code, Ala. Code 1975, § 7-3-101 et seq.), Baptist Health Systems, Inc. ("BHS"), d/b/a BMC - Princeton Medical Center, filed a motion in limine asking for the "exclusion of any evidence of a breach in the standard of care that has not been specifically pled."

Then, after trial was set to begin in this case, the trial court <u>sua sponte</u> dismissed all four counts of Mottern's complaint on the ground that they were not pleaded with the necessary specificity.[4] Importantly, the operative complaint in this case had been filed 13 years earlier. In the time since, BHS had filed no motions directed at the sufficiency of the allegations in that complaint. BHS also did <u>not</u> request the dismissal of Counts I and II. Even on appeal, BHS agrees that the dismissal of those two counts should be reversed.

Although BHS does argue on appeal that the trial court properly dismissed Counts III and IV for failure to sufficiently plead those claims under the AMLA, it waived any such challenges to the sufficiency of the pleadings when it filed its answer to the complaint on May 11, 2011. <u>See</u> 1 Gregory C. Cook, <u>Alabama Rules of Civil Procedure Annotated</u>, Rule 8, note 10, p. 261 (5th ed. 2018) ("Party who fails to timely raise issue of failure to plead with particularity normally waives that requirement.");

---

[4]It might be argued that the trial court's judgment was not final given its use of the word "interlocutory." One reading of the trial court's judgment could be that the trial court intended to certify legal questions to this Court under Rule 5, Ala. R. App. P.  However, it appears to me that the trial court's judgment expressly dismisses all counts against BHS and, therefore, it is not an "interlocutory" order.

see also Sanders v. Mullins, 579 So. 2d 1349, 1350 (Ala. Civ. App. 1990) ("The time for raising [the issue of failure to plead with particularity] was in the pretrial pleadings."); Broadleaf, Inc. v. Pierce, 445 So. 2d 308, 310 (Ala. Civ. App. 1984) ("[T]his court notes that a party who fails to timely raise the issue of failure to plead with particularity normally waives that requirement."); 2 James W. Moore, Moore's Federal Practice ¶ 9.03[5] (3d ed. 2014) ("If the failure to plead with particularity under Rule 9(b)[, Fed. R. Civ. P.,] is not raised in the first responsive pleading or in an early motion, the issue will be deemed waived."); In re General Motors LLC Ignition Switch Litig., 154 F. Supp. 3d 30, 41 (S.D.N.Y. 2015) ("[Defendant's] reliance on Rule 9(b)[, Fed. R. Civ. P.] -- which establishes a heightened pleading standard for fraud -- is misplaced at the summary judgment stage and on the eve of trial." (citing USA Certified Merchs., LLC v. Koebel, 262 F. Supp. 2d 319, 333 (S.D.N.Y. 2003))).[5] Moreover, BHS did not even file a motion requesting dismissal or summary

_____

[5]The waiver of the issue whether the plaintiff pleaded with sufficient particularity would not, of course, affect the defendant's ability to move for a summary judgment based upon, for instance, the alleged insufficiency of the evidence to support an AMLA claim. Moreover, BHS did not even file a motion seeking dismissal or summary judgment as to Counts III and IV. Thus, the trial court's dismissal of those claims was improper and must be reversed.

judgment as to Counts III and IV. Thus, the trial court's dismissal of those claims was improper and must be reversed.

The main opinion, however, goes further and purports to decide whether the AMLA's standard-of-care provisions apply to Counts III and IV. There is simply no reason for us to reach this question today. The applicability of the AMLA's standard-of-care provisions has no bearing on our decision to reverse the trial court's dismissal of all of Mottern's claims. Because the main opinion's discussion of this issue is not necessary to the result, I cannot join the opinion as written and concur only in the result.[6]

---

[6]I observe that, upon remand, a trial may occur and, if so, the trial court will need to instruct the jury on the law applicable to Counts III and IV. Given the unresolved legal issues discussed above, it is possible that, without carefully worded instructions on those counts, a general verdict could result -- thereby leading to a "good count/bad count" problem. See, e.g., Complete Cash Holdings, LLC v. Powell, 239 So. 3d 550, 559-60 (Ala. 2017) ("'"When a jury returns a general verdict upon two or more claims, as it did here, it is not possible for this Court to determine which of the claims the jury found to be meritorious. Therefore, when the trial court submits to the jury a 'good count' -- one that is supported by the evidence -- and a 'bad count' -- one that is not supported by the evidence -- and the jury returns a general verdict, this Court cannot presume that the verdict was returned on the good count."'" (quoting Larrimore v. Dubose, 827 So. 2d 60, 63 (Ala. 2001), quoting in turn Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1257 (Ala. 1998))). In such a case, a judgment entered upon the verdict must be reversed. I

Stewart, J., concurs.

---

therefore suggest that the parties and the trial court carefully consider a jury-verdict form to address such concerns.

SHAW, Justice (dissenting).

There are four counts in the complaint in this case against Baptist Health System, Inc. ("BHS"), d/b/a BMC - Princeton Medical Center: Count I, alleging negligence; Count II, alleging wantonness; Count III, alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD"); and Count IV, alleging breach of an implied warranty under the Uniform Commercial Code, Ala. Code 1975, § 7-3-101 et seq. The trial court's order from which this appeal purportedly arises, which is titled "Order Certifying Counts One, Two, Three and Four for an Interlocutory Appeal," does not appear to dismiss those counts. Instead, using the language of Rule 5, Ala. R. App. P., the trial court found "controlling question[s] of law as to which there is substantial ground for difference of opinion," "that an immediate appeal from the Order would materially advance the ultimate termination of the litigation on these issues," and that an "appeal would avoid protracted and expensive litigation."[7] The questions the trial court posed are as follows:

---

[7]Rule 5(a), Ala. R. App. P., provides, in part:

"Does the failure of the Plaintiff to specifically plead in a timely manner the allegations regarding [Counts I and II], some of which are contained within Plaintiff's Rule 26[, Ala. R. Civ. P.,] Expert Disclosure but not included with specificity within Plaintiff's Complaint(s), subject the herein Complaint(s) to dismissal when timely amendments to the Complaint(s) were not made within ninety (90) days before trial, contrary to the language set forth in [§ 6-5-551, Ala. Code 1975]?

"Is [BHS] a seller or a merchant and do the causes of action for AEMLD (Count [III]) and Breach of Implied Warranties (Count [IV]) lie against Defendant [BHS] under the circumstances pleaded in the Plaintiff's Complaints?"[8]

---

"A petition to appeal from an interlocutory order must contain a certification by the trial judge that, in the judge's opinion, the interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion, that an immediate appeal from the order would materially advance the ultimate termination of the litigation, and that the appeal would avoid protracted and expensive litigation."

[8]The trial court stated that Counts I and II "are subject to dismissal" and that Counts III and IV "are due to be dismissed," but the trial court clearly attempted to certify a Rule 5 interlocutory appeal. I see no need to recount the numerous aspects of the order indicating that apparent intent, other than to note its title; that the trial court "certified" questions for an "interlocutory appeal"; that the trial court stated several times that it was granting permission to appeal; and that the trial court otherwise does not state that the counts were dismissed. If this order dismisses of all four counts -- and is, therefore, a final judgment -- then there would be no need for the trial court to attempt to utilize the language of Rule 5, grant permission to appeal, or refer to the order as "interlocutory." Cf. Rule 58(b), Ala. R. Civ. P. ("A written order or a judgment will be sufficient if it ... indicates an intention to adjudicate,

I would deny permission to appeal the first question, which is not a controlling question of law. Instead, it involves the application of the law, here § 6-5-551, Ala. Code 1975, to the relevant counts as pleaded in the complaint. I believe the second question poses an interesting issue that perhaps should be addressed by this Court, given that the trial court, in its order, stated that it found that BHS was "not a seller … or a merchant" for purposes of Counts III and IV; thus, it appears that the trial court is poised to dismiss those counts on that basis.

Bryan, J., concurs.

considering the whole record, and if it indicates the substance of the adjudication.").